UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| ALLEN MEADOR, II, <br><br> Plaintiff, <br><br> V. <br><br> DR. GROWSE, *et al.*, <br><br> Defendants. | Civil Action No. 12-CV-120-KKC <br><br> **MEMORANDUM OPINION AND ORDER** |

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

The Court has reviewed and considered the following pleadings:

(1) The "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" [R. 22] filed by Defendant Michael Growse, M.D., former Clinical Director of the Federal Medical Center ("FMC")-Lexington,[1] a Bureau of Prisons ("BOP") prison facility which is located in Lexington, Kentucky;

(2) The sealed medical records of Plaintiff Allen Meador, II [R. 24];

(3) The sealed Declaration of Dr. Growse [R. 33];

(4) Meador's "Response" [R. 29] (to Dr. Growse's Motion to Dismiss); and

(5) Dr. Growse's "Reply" [R. 30] to Meador's Response.

---

[1] In addition to being the former Clinical Director of FMC-Lexington, Dr. Growse also saw patients and provided them with medical care. *See* Declaration of Dr. Michael Growse, M.D. [R. 33, ¶1] Dr. Growse has since retired from the BOP. [*Id.*]

For the reasons set forth below, the Court will grant Dr. Growse's motion for summary judgment as to Meador's Eighth Amendment medical claims against him.

## PROCEDURAL HISTORY
### 1. Meador's Complaint

Meador is confined in FMC-Lexington. In April 2012, he filed this *pro se* civil rights action, asserting claims under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).[2] Meador alleges that he suffers from chronic pain related to a pancreatic condition which was diagnosed in 2005. When Meador entered the federal prison system he was being treated with Lortab (acetaminophen and hydrocodone) and morphine. However, a cell search conducted on March 3, 2011, revealed that Meador had hidden morphine pills in his locker in violation of prison rules. As a result, Dr. Growse changed Meador's pain management regimen, discontinued his morphine medication, and replaced morphine with other, non-narcotic medications to treat Meador's abdominal pain.

Meador immediately filed an inmate grievance with former FMC-Lexington warden Deborah Hickey, indicating that this medication was not sufficient to address the pain he was experiencing. Hickey denied the grievance, noting that Meador's medical records revealed that his prescription for narcotic pain medication had been stopped because he had violated prison rules regarding its use, and because there was

---

[2] Meador also sued Deborah Hickey, the former Warden of FMC-Lexington, but on August 9, 2012, the Court dismissed Meador's claims against Hickey. [R. 12] The Court determined that Hickey had not been personally involved in Meador's medical care, and that her actions in denying Meador's administrative grievances were insufficient to hold her vicariously liable for the medical decisions made by medical professionals. [*Id*., pp. 2-4]

2

no "objective evidence that narcotics are clinically indicated at this time." [R. 1-6] Subsequent appeals were denied, although the BOP's Central Office's February 8, 2012, response indicated that Meador had been receiving oxycodone for pain management since September 16, 2011. [R. 1-8]

Meador alleges that Dr. Growse's decision to change his pain management regimen amounted to deliberate indifference to his serious medical needs and violated his right to right to be free from cruel and unusual punishment, guaranteed by the Eighth Amendment of the U.S. Constitution. [R. 1, p. 12]. Meador seeks monetary damages from Dr. Growse for the pain and suffering which he alleges that he endured between March 3, 2011, and September 16, 2011.

## 2. Motion to Dismiss/Summary Judgment

In his Motion to Dismiss/Summary Judgment [R. 22], Dr. Growse argues that Meador has at best alleged a difference of opinion as to the proper course of his medical treatment, not a claim of deliberate indifference to his serious medical condition. Dr. Growse asserts that his decision to discontinue Meador's morphine medication was completely warranted given the discovery of Meador's improper hoarding--or "cheeking"--of the medication. Alternatively, Dr. Growse argues that even if the Court determines that he violated Meador's Eighth Amendment rights, he is entitled to qualified immunity.

Dr. Growse has filed under seal Meador's numerous medical records [R. 24] and his own sworn Declaration [R. 33], in which he stated that he is familiar with Meador's medical records, pancreatic condition, and pain management issues, having treated Meador while he was confined in FMC-Lexington. [Growse Decl., R. 33, ¶1]

Dr. Growse provided a chronological summary of events, set forth below, relating to Meador's medical issues at FMC-Lexington.

When Meador arrived at FMC Lexington on March 12, 2009, he weighed 191 pounds and presented a history of chronic pancreatitis and accompanying abdominal pain. [*Id.*, ¶2]. Shortly after his arrival, Meador was prescribed morphine (one 30 mg, 12-hour time release pill), once daily, for his abdominal pain. [*Id.*][3]

Meador's prescription for daily morphine continued through March 2, 2011. [*Id.*, ¶3] On that date, security staff at FMC-Lexington discovered multiple doses of Meador's morphine pills inside his personal property locker, in his room, and concluded that Meador had been "cheeking" (or concealing and pretending to swallow) the morphine pills at the pill line; taking the pills back to his room; and storing them in his locker, in violation of prison rules. [*Id.*] After the staff questioned Meador about the discovery of the medication, he admitted to the violations. [*Id.*] On March 9, 2011, Meador was found guilty of a Code 302 violation, "Misusing Authorized Medication," which resulted in him losing 13 days of his good conduct time and 180 days of phone privileges. [*Id.*]

On March 3, 2011, the day after the pills were found, Dr. Growse examined Meador to re-assess Meador's prescription and pain management needs in light of the discovery of the stash of morphine pills. [Growse Decl., ¶4] Dr. Growse determined

---

[3] Dr. Growse states that because Morphine is a controlled prescription medication, the prison medical staff must dispense it to the prisoner during the "pill line," which enables the staff to watch the prisoner take the medication. [*Id.*] Dr. Growse explains that this procedure is standard for dispensing such medications in prison, because it prevents inmates from improperly possessing and misusing the medicine, either by selling it or taking larger doses than what has been prescribed. [*Id.*]

4

that even though Meador had not had taken morphine since the discovery of his hidden pill stash, he displayed no objective physical symptoms of pain, nor did he display other adverse symptoms, such as sweating, respiratory changes, abnormal vital signs, abnormal posture/gait, agitation, or weight loss. [*Id*.] At that time, Meador weighed 211 pounds --twenty (20) pounds more than his weight two years before when arrived at FMC Lexington-- and his temperature and blood pressure were within normal ranges. [*Id*.] Based on his physical examination of Meador, which revealed no objective evidence of extreme pain, Dr. Growse concluded that Meador's pain complaints could be managed without morphine. [*Id*.] Dr. Growse therefore ordered the medical staff to taper-off Meador's morphine over a three-day period, and after that, to discontinue it. [*Id*.]

A few days later, on March 8, 2011, Meador's FMC-Lexington physician examined him and prescribed non-narcotic pain medications (a combination of Tylenol and Meloxicam, a non-steriodal anti-inflammatory drug with analgesic effects) to reduce Meador's pain and the inflammation caused by his chronic condition. [*Id*., ¶6]. Meador was also instructed to return to the clinic if his condition changed. [*Id*.]

Over the next six months, Meador received medical treatment for his condition and was administered various non-narcotic pain medications. [Growse Decl., Attached Medical Records] Meador subsequently returned to the facility clinic complaining of abdominal pain associated with his pancreatitis. [Growse Decl., ¶7] On September 14, 2011, Meador was referred to University of Kentucky emergency medicine specialists for complaints of abdominal pain. [*Id*.] After this outside

consultation, Meador was then prescribed a narcotic painkiller (oxycodone, 10 mg[4]), which he was to take three times a day. [*Id*.] This prescription was later renewed in October and November of 2011. [*Id*.]

In December 2011, Meador's physician returned him to morphine, at the same dosage as he had previously received. [*Id*., ¶8] Meador continued on morphine until April 2012, when he was again placed on oxycodone, which was refilled a number of times. [*Id*.] In July 2012, Meador' pain medication was changed to Methadone, an opioid analgesic. [*Id*.]

### 4. Meador's Response to Dr. Growse's Motion to Dismiss/Summary Judgment

Meador responded that Dr. Growse acted with deliberate indifference to his serious medical needs; that his medical condition was "obvious;" and that Dr. Growse deliberately delayed necessary medical treatment of morphine, as "punishment." [R. 29, pp. 1-6] Meador suggests that because his condition was obvious even to a lay person, he does not need to offer expert opinion to substantiate his deliberate indifference claim. [*Id*., p. 7] Finally, Meador argues that Dr. Growse is not entitled to qualified immunity because his actions violated the Eighth Amendment's prohibition against cruel and unusual punishment, and that Dr. Growse was, or should have been, aware of his (Meador's) established Eighth Amendment rights.

### 5. Dr. Growse's Reply to Meador's Response

Dr. Growse replies that he was not deliberately indifferent to Meador's serious medical needs, again noting that between March 2011 and September 2011, Meador

---

[4] Dr. Growse states that Oxycodone, like morphine, is an opioid analgesic. [*Id*.]

continued to receive alternative, non-narcotic medications for his abdominal pain, and that Meador's unauthorized "cheeking" (pretending to ingest) his morphine medication, then hoarding it, justified the decision to suspend dispensation of morphine for several months. Dr. Growse reiterates that Meador's claim is nothing more than a disagreement about the type of medication he was given, but that such a disagreement does not rise to the level of an Eighth Amendment violation. Dr. Growse further asserts that under established case law, prisoners are not entitled to demand specific medical care.

## DISCUSSION
### 1. Standard of Review

Because Dr. Growse has submitted his affidavit and other materials outside of the pleadings, the Court will consider his arguments as a motion for summary judgment under Federal Rule of Civil Procedure 56. *See Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993); *Smith v. The Cheesecake Factory Restaurants, Inc.*, No. 3:06–00829, 2010 WL 441562, at**3–4 (M.D. Tenn. Feb.4, 2010) (court converted motion to dismiss to motion for summary judgment where both parties relied on proof that fell outside pleadings).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d

7

337, 341–42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the nonmoving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

2. **Standard of Review Applied to Facts**

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to a prisoner's objectively serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A deliberate indifference claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id*. Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id*.

Dr. Growse does not appear to contest the proposition that pancreatitis is a serious medical condition, and the Court has no difficulty in concluding that pancreatitis qualifies as an objectively serious medical condition. *See Lopez v. Green*, Civil No. PJM 09-1942, 2012 WL 1999868, at *3 (D. Md., June 4, 2012) (determining that plaintiff's pancreatitis condition qualified as a serious medical condition); *Horn v. Bay County Sheriff's Dept*., No. 2:07-CV-10116, 2008 WL 3285808, at *5 (E.D. Mich. Aug. 7, 2008) (concluding that pancreatitis was a

8

"sufficiently serious medical condition," and that the plaintiff therefore satisfied the objective component of the *Farmer* test); *Ramos v. DeTellal*, No. 95 C 5308, 1998 WL 704352, at *3 (N.D. Ill. Sept. 24, 1998) (finding evidence that the prisoner "was diagnosed with acute pancreatitis that is chronic and can create intermittent severe pain" indicated that he "suffered from a serious medical need.").

Meador's deliberate indifference claim against Dr. Growse fails, however, because he has not satisfied the subjective prong of the *Farmer* test. The subjective component can be satisfied by showing that the prison official was deliberately indifferent to a prisoner's serious medical needs, such as by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). The record does not demonstrate that Dr. Growse intentionally disregarded any medical risks that Meador faced in March 2011.

After physically examining Meador on March 3, 2011, Dr. Growse found no objective symptoms of pain--such as weight loss, sweating, abnormal temperature or blood pressure, abnormal vital signs, agitation, abnormal vision, abnormal gait or posture, or respiratory changes--which would have warranted the continued administration of morphine medication. Lacking any objective evidence of extreme pain, and using his medical expertise, Dr. Growse determined that he could effectively treat Meador's subjective complaints of pain without morphine. Dr. Growse did not terminate Meador's the medication without either examining Meador or reviewing his medical history; he made that decision based on objective findings from his examination of Meador, and his review of Meador's medical history. Over

the next six months, the prison medical staff continued to monitor and treat Meador, and to administer a several medications (including Oxycodone and Methadone) to reduce pain and inflammation. In September 2011, the medical staff had Meador transported to the University of Kentucky Emergency Room for further treatment and evaluation. Such ongoing and responsive care is the antithesis of deliberate indifference. *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994); *Lara-Portela v. Stine*, No. 07-CV-014-KKC, 2008 WL 45398, at *7-9 (E.D. Ky. Jan. 2, 2008).

Meador does not allege that he was denied any medication for his pancreatitis; he alleges *only* that he disagreed with Dr. Growse's decision, in early March 2011, to discontinue his morphine medication. Dr. Growse has submitted his medical opinion that the termination of morphine in March 2011 was justified based on the fact that Meador did not manifest any objective symptoms of pain or distress, only subjective complaints of pain. Meador was not denied any medication to treat his pancreatitis condition between March 2011 and September 2011; he was only denied the medication of his choice. Indeed, during this time-period, Meador was administered several alternative medications, including oxycodone.

Thus, Meador received ongoing medical care and the FMC-Lexington medical staff continually administered numerous medications to him--albeit not the medications that Meador wanted. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976); *see*, *e.g.*, *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995); *Simpson v.*

*Ameji*, 57 F. App'x 238, 239 (6th Cir. 2003). The difference of opinion between a prisoner and his doctor as to medical treatment and/or choices of medication involve issue of medical judgment, and differences of opinion about medical treatment do not rise to the level of an Eighth Amendment violation. *Frost v. Stalnaker*, File No. 09-cv-662, 2010 WL 5830446, *6 (S.D. Ohio Dec. 17, 2010); *Staples v. Dewalt*, File No. 07-cv-385, 2009 WL 1505560, *6 (E.D. Ky. May 27, 2009).

Federal courts generally refuse to intervene in questions of medical judgment, *Flick v. Vadlamudi*, No. 09-CV-647, 2010 WL 3884508 *22 (W.D. Mich. Aug. 9, 2010), and, relevant to Meador's case, federal courts have also consistently held that a medical provider has not been deliberately indifferent to a prisoner's medical needs when he decides to withhold a certain medication based on "medical judgment" and "reasonable concern about providing narcotics to jail inmates." *See*, *e.g.*, *Williams v. Rodriguez*, No. 10-2715, 2012 WL 1194160, *10 (April 10, 2012) ("plaintiff has provided evidence that he was denied morphine, not that he was deprived of other medications"); *Todd v. Bigelow*, No. 09-cv-808, 2012 WL 627965, *6 (D. Utah Feb. 24, 2012) (finding no deliberate indifference when inmate was offered other, alternative pain medications); *Shockley v. Fox*, 444 F. App'x 36, 38 (5th Cir. 2011) (rejecting prisoner's claim that the prison medical staff's refusal to administer narcotic pain medication violated his Eighth Amendment rights); *Cutler v. Correctional Medical Services*, No. 3:08-CV-00507-BLW, 2011 WL 4479025, at *9-*10 (D. Idaho, Sept. 26, 2011) (same); *Hood v. Prisoner Health Services, Inc.*, 180 F. App'x. 21, 25 (10th Cir. 2006) (same).

Meador's disagreement with Dr. Growse's decision to eliminate his morphine medication is, if anything, one of professional malpractice or negligence, not deliberate indifference. *See Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) ("malpractice does not violate the Eighth Amendment; instead the suit charges that the defendants inflicted cruel and unusual punishment on the plaintiff by refusing to treat his condition."). At best, Meador might have had a negligence claim under the Federal Tort Claims Act, but he does not assert a valid deliberate indifference claim under the Eighth Amendment. *See Starling v. United States*, 664 F. Supp.2d 558, 570 (D.S.C. 2009); *Smith v. United States*, 2007 WL 2155703, at *6 (W.D. Pa. 2007).

Further, in discontinuing Meador's morphine medication in March 2011, Dr. Growse reasonably considered the fact that the prison staff had discovered that Meador had been improvising his ingestion of his morphine medication and hoarding the pills for future improper use. Dr. Growse concluded that Meador's actions of *pretending* to ingest his morphine pills and secretly hoarding the pills substantiated that Meador's pain level was not so high that he needed to continue taking the morphine medication. Courts have consistently determined that prison medical doctors have not been deliberately indifferent to prisoners' medical needs by terminating certain medications, after it was determined that the prisoners had been "cheeking," or stowing away, or otherwise abusing, their prescribed medications. *See, e.g., Reed v. Sapp*, 211 F.3d 1270, 2000 WL 571994 (6th Cir. 2000) (no deliberate indifference as to pain medications, where the prisoner had been accused of salvaging his pain medication for prohibited use); *Todd*, 2012 WL 627965 at *6 (no deliberate indifference, medication was discontinued after inmate found to be

"cheeking"); *Atakpu v. Lawson*, File No. 05-cv-524, 2008 WL 5233467, *11 (S.D. Ohio Dec. 11, 2008) (same).[5]

Finally, Meador has not supported his claims with any expert opinion, and has thus not contradicted Dr. Growse's sworn Declaration and the authenticated medical records. In his response to the Motion to Dismiss, Meador broadly alleged that his pancreatitis condition and his pain level were "obvious" [R. 8, p. 14]; that lay testimony would suffice to substantiate his claims, *id*.; and that "any licensed medical practitioner should have known that Plaintiff is required to have a narcotic to Pancreatic Disease…." [*Id*.] Meador thus appears to be relying on the "common knowledge exception" used in negligence claims, and to be claiming that his deliberate indifference claims can proceed by offering only his interpretation of his medical records and his own lay opinion about his pancreatitis condition and medication needs. That rule does not apply here, because Meador asserts Eighth Amendment claims of deliberate indifference, not claims of mere negligence.[6]

Accordingly, no issues of material fact exist. The record establishes that Dr. Growse reasonably responded to Meador's medical needs and provided constitutionally adequate medications to Meador, although the medications which

---

[5] *See also Shea v. Wheeler,* No. 00-72, 2001 WL 34376846, * 6 (W.D. Wis. June 19, 2001)(same); *Aquino v. Girdich*, No. 04-cv-87, 2007 WL 201170 (N.D.N.Y. Jan. 23, 2007) (no deliberate indifference, medication was discontinued after inmate was found to be misusing medicine); *Johnson v. Herman*, No. 05-cv-372, 2006 WL 1408389, * 2-3 (N.D. Ind. May 18, 2006) (same); *Jones v. Ehlert*, 704 F. Supp. 885, 888-889 (E.D. Wis. 1989) (same); *Percival v. Kelso*, No. 09-cv-1699, 2011 WL 794419, *6 (E.D. Cal. March 1, 2011) (no deliberate indifference, medication was discontinued after inmate was found selling medicine to other inmates).

[6] Even in the context of a negligence claim, however, the decision regarding the termination of morphine medication and to prescribe other alternative medications to treat pancreatitis would likely involve too complex a question to fall within the "common knowledge" exception.

Meador received were not the ones which he preferred. Meador's claims amount to nothing more than a disagreement as to adequacy and sufficiency of his medical treatment, not deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Because the Court has determined that no constitutional violation occurred, an analysis of Dr. Growse's invocation of qualified immunity is not necessary. Dr. Growse's motion for summary Judgment will therefore be granted, and this action will be dismissed with prejudice.

## CONCLUSION

Accordingly **IT IS ORDERED** that:

(1) The "Motion to Dismiss," filed by Defendant Michael Growse, M.D., former Clinical Director of the Federal Medical Center-Lexington is **DENIED** as **MOOT**, but his alternative "Motion for Summary Judgment" [R. 22] is **GRANTED**.

(2) The Court will enter an appropriate Judgment.

(3) This proceeding is **DISMISSED** and **STRICKEN** from the Court's active docket

This March 12, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY